**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| BERNARD JONES, | ) | CASE NO. 5:20-CV-02065-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE |
| v. | ) | JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION &** |
| | ) | **ORDER** |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Plaintiff, Bernard Jones ("Jones" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying to Jones SSI and DIB. Additionally, Defendant's Motion to File a Surreply (ECF No. 19) is GRANTED. Defendant's Surreply (ECF No. 19-1) is deemed filed as of August 5, 2021.

## II. Procedural History

On August 11, 2017, Claimant filed for DIB. Claimant also applied for SSI on July 20, 2017. In both applications, Claimant alleged disability beginning April 1, 2008. These claims were denied initially on December 4, 2017, and upon reconsideration on June 11, 2018. Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 275). On October 8, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and

an impartial vocational expert testified.  (ECF No. 12, PageID #: 130-156).  On November 6, 2019, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 12, PageID #: 107-128).  The ALJ's decision became final on July 13, 2020, when the Appeals Council declined further review.  (ECF No. 12, PageID #: 76-82).

On September 15, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 15, 17, 18, 19). Claimant asserts the following issues on appeal:

1. The ALJ claimed that he would not apply the doctrine of res judicata yet erred when he proceeded to adopt ALJ Shinn's physical limitations.

2. The ALJ committed harmful error when his RFC did not consider the effect of the combination of Jones' severe impairments on his ability to engage in substantial gainful activity on a sustained basis.

3. The ALJ committed harmful error when he failed to find Jones' testimony credible and failed to apply the guidelines contained in Social Security Ruling 16-3p.

(ECF No. 15 at 1).

## III. Background

### A. Previous Application[1]

Claimant previously applied for SSI and DIB alleging disability onset date of April 14, 2009. (ECF No. 12, PageID #: 160). Following a hearing before an ALJ, the ALJ determined that Claimant was not under a disability from April 14, 2009 through February 11, 2013, the date of the decision. (ECF No. 12, PageID #: 169). In the 2013 ALJ hearing decision, the ALJ found that Claimant had the residual functional capacity ("RFC") "to perform light work as defined in 20

---

[1] The application at issue here is allegedly Claimant's fifth attempt to obtain disability benefits. (ECF No. 12, PageID #: 495).

CFR 404.1567(b) and 416.967(b) with certain restrictions.  Specifically, the claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. He can occasionally stoop and crouch.  The claimant must be able to alternate his position between sitting and standing approximately every hour." (ECF No. 12, PageID #: 165). Claimant's request for review of the 2013 ALJ decision was denied by the Appeals Council on June 16, 2014. (ECF No. 12, PageID #: 174). Claimant did not further challenge the 2013 ALJ decision.

### B.  Relevant Hearing Testimony

During the hearing, Jones testified that he was unable to work due the pain in his lower back and sleep deprivation caused by his back pain. (ECF No. 12, PageID #: 136-137). He testified the pain never went away but that it changed in intensity. (ECF No. 12, PageID #: 137). Jones testified that he was taking Neurontin, which helped with the pinching sensation in his back but not the overall pain. (ECF No. 12, PageID #: 138-139). Jones described his pain as pain traveling down his legs to his ankles. (ECF No. 12, PageID #: 148). He had problems with his balance. (ECF No. 12, PageID #: 149). He stated that when washing dishes, he could tolerate standing for about ten minutes before needing to sit down and could then return.  (ECF No. 12, PageID #: 149). He testified that his knee and ankle had also been bothering him, but he had not treated for those issues at the time of the hearing. (ECF No. 12, PageID #: 141). Jones also testified that he was suffering from anxiety and depression (ECF No. 12, PageID #: 144) and that he had problems with his short-term memory (ECF No. 12, PageID #: 150).

When asked to describe his typical day, Jones states that he no longer cooks, he does not perform serious cleaning, laundry, mow his law, or grocery shop. (ECF No. 12, PageID #: 146-147). However, he stated that he could walk to the grocery store if it was to pick up a limited number of items. (ECF No. 12, PageID #: 147). Jones testified that he took two naps a day. (ECF

No. 12, PageID #: 150).

## C. Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> Diagnostic imaging of the lumbar spine, dated October 17, 2017, indicated mild bulging from the L4 through S1 vertebral levels, with minimal foraminal narrowing at the L5/S1 vertebral joint, but no canal stenosis or compressive pathology at any lumbar level, and stable since 2013 (C5F/1-2). […]
>
> The claimant is not a candidate for surgery or narcotic pain medications, and recommendations for treatment have been restricted to heat, stretching and exercise, and non-narcotic medications (C6F/1), (C12F/9).
>
> The claimant reports a very good benefit from the use of a combination of the prescription medications "Gabapentin" and "Topamax" (C15F/3, 9), (C17F/3), (C19F/2). He has reported numerous side effects from these medications in reports to the Agency (C4E/7), (C6E/5), (C9E/8), but has routinely denied side effects, in reports to his prescriber (C12F/6), (C15F/3, 9), (C17F/3), (C19F/2).
>
> He has followed no other discernible form of treatment, whether conservative in nature, as by a course of physical therapy, or more invasive, as by a course of injection therapy through pain management. Reports of injections in 2015 are reported in the record, but no such evidence was included. Clinical examinations included in the record have consistently, albeit not universally, reported either minimally adverse, or normal findings, including one dated October 14, 2015, which reported tenderness to palpation, but able to flex 70-80 degrees and rotate 20 degrees, with good strength and tone, and a normal heel walk (C6F/6), one dated May 9, 2018, which reported tenderness to palpation but good range of motion [80 degrees flexion and normal otherwise], with negative straight leg raises, normal gait, strength, reflexes and sensory function (C9F), or one dated April 12, 2019, which reported normal motor and sensory function and normal reflexes (C18F/4).
>
> [. . .]
>
> In terms of the claimant's alleged psychological disorders, he was diagnosed with mood disorder-not otherwise specified, on

4

September 6, 2013 (C1F/1) and with depression, on May 11, 2016 (C2F/6). He was diagnosed with anxiety disorder-not otherwise specified, and cannabis abuse, each on September 6, 2013 (C1F/1). While these findings would be consistent with the claimant's allegations of depression and anxiety, the record, when considered as a whole, is not supportive of the contention that the existence of these impairments would be preclusive of all types of work.

The claimant's cannabis dependence is among the earliest of his diagnoses, and he concedes regular use for several years (C10F/2). The presumption exists that there is no period of sobriety evidenced in the record. However, because there are no limitations documented in the record, which would correspond to a finding of 'disabled', the claimant's cannabis abuse is not material to the conclusions announced in this decision.

The claimant's treatment has been, almost exclusively, confined to the use of psychotropic medications. He reports side effects of drowsiness with their use (C6E/5), but concedes their positive effect on attenuating his symptoms (C7E/1), (C7F/2), (C9F/1), (C18F/4). He has twice begun a regimen of counseling, but his first ended after seven months and eight visits in 2013 (C1F/2) and his second ended after one month and single visit, in 2018 (C13F/1).

[. . .]

Likely a function of his want of formal treatment, the claimant has been assigned a single global assessment of function score. That score, sixty (C1F/1), denotes no more than moderate difficulties of social or occupational function. However, this very singularity of issuance renders highly dubious, the value of these scores as an analytical tool. Global Assessment of Function Scores were intended to alert treatment providers to the patient's level of function during a specified period. If no period was specified, they were effective only as to the date issued. Nowhere in this claim are these scores issued with sufficient regularity as to permit the inference of a particular level of function, or even a particular range of function, for one full year, and so, by definition, these scores do not constitute an opinion addressed to a severe impairment. Such validity as they may have once had is now further diluted by the discontinuance of their use in the Diagnostic and Statistical Manual of Mental Illness-Fifth Edition, now in general use. These scores cannot serve as any useful basis in arriving at the conclusions announced in this Decision.

(ECF No. 12, PageID #: 116-118).

### D. Opinion Evidence

#### 1. State Agency Reviewing Physicians, Leon Hughes, M.D., and Stephen Sutherland, M.D.

State agency reviewing physicians Dr. Leon Hughes and Dr. Stephen Sutherland opined that Claimant had the ability to perform light work with additional limitations, including that he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, occasionally stoop and crouch, and be allowed to alternate between sitting and standing every hour. (ECF No. 12, PageID #: 189, 225).

#### 2. State Agency Reviewing Psychologists, Bruce Goldsmith, Ph.D., and Cindy Matyi, Ph.D.

State agency reviewing psychologist Dr. Bruce Goldsmith opined that Claimant did not have any limitation is his understanding and memory, sustained concentration and persistence, or adaptation, but that he was moderately limited in his abilities to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors, and not significantly limited in his abilities to get along with coworkers or peers and maintain socially appropriate behavior and adhere to social appropriate standards of neatness and cleanliness.  (ECF No. 12, PageID #: 190). Dr. Goldsmith opined that Claimant can "interact superficially with others." (ECF No. 12, PageID #: 190). Dr. Goldsmith further explained that Claimant "can perform simple to mod[erately] complex tasks [without] sustained social interactions with general public." (ECF No. 12, PageID #: 191).

On reconsideration, Dr. Cindy Matyi opined that Claimant was moderately limited in his ability to understand and remember detailed instructions and explained that Claimant was depressed, anxious, and somatically preoccupied with restricts his capacity for detailed/complex tasks but that he is able to comprehend and remember simple (1-2 step) and occasional complex

(3-5 step) instructions. (ECF No. 12, PageID #: 226). Dr. Matyi opined that Claimant was moderately limited in is ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek with interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (ECF No. 12, PageID #: 226-227). Dr. Matyi also opined that Claimant was not significantly limited in his ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness" and further explained this opinion was due to "[l]egal history, impulsive, misinterprets interpersonal nuance at times. Regardless, the claimant can interact adequately on a superficial basis." (ECF No. 12, PageID #: 227).

### 3. Consultative Physical Examiner, Mark Vogelgesang, M.D.

Dr. Mark Vogelgesang performed a consultative physical examination of Claimant on May 9, 2018. Following that examination, Dr. Vogelgesang opined that Claimant could perform light lifting of up to 20 pounds but may have to avoid extensive bending or twisting. (ECF No. 12, PageID #: 489).

### 4. Consultative Psychological Examiner, E.M. Bard, Ph.D.

Psychological consultant Dr. E.M. Bard examined Claimant in November 2017 and May 2018 and gave two opinions related to Claimant's mental impairments and abilities. (ECF No. 12, PageID #: 475-480, 495-500). Following the initial consultation, Dr. Bard opined that Claimant had a normal range of ability and limitation in understanding, carrying out and remembering instructions, both one step and complex. (ECF No. 12, PageID #: 480). With

7

respect to Claimant's ability to concentrate, persist, and maintain pace, Dr. Bard opined "The claimant performed within the Average range on the mental status examination. He exhibits no unusual problems in regard to his concentration and persistence. He did not require questions to be repeated or simplified. His performance in this area of functioning was within a normal range." (ECF No. 12, PageID #: 480). With respect to Claimant's abilities and limitations in maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, Dr. Bard opined that Claimant's overall performance was "substandard". (ECF No. 12, PageID #: 480). Finally, Dr. Bard opined that Claimant had a low average ability to deal with work pressures in a competitive work setting. (ECF No. 12, PageID #: 480). Six months later, Dr. Bard opined in a substantially similar manner. (ECF No. 12, PageID #: 495-500). Dr. Bard revised her opinion only insofar as she suggested some limitation in Claimant's ability to adapt to day-to-day stressors.

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> This claim was decided under the auspices of Acquiescence Ruling 98-4 (6) [colloquially, the *Drummond* Ruling]. However, because of the introduction of evidence, new and material to the determination of disability, it is found that it would not be appropriate to be bound, in their entirety, by the findings of ALJ Shinn (C1A).
>
> [. . .]
>
> In asserting an alleged onset date of April 1, 2008, the claimant has impliedly requested reopening of one or more of his prior claim(s). However, the claimant has met none of the prerequisites for such re-opening, as set forth at 20 CFR 404.988 and 989 and 20 CFR 416.1488 and 1489. Accordingly, and having considered all relevant criteria, including the potential application of SSR 91-5p, I nevertheless find no basis to re-open the claimant's prior application(s). This decision covers the period from and after

February 12, 2013 [the day after the date of ALJ Shinn's decision in the claim(s) filed February 4, 2011]. As to the period between April 1, 2008 and February 11, 2013, this claim is dismissed.

(ECF No. 12, PageID #: 110-111).

2. The claimant has not engaged in substantial gainful activity since February 12, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.). Except that this finding recites the alleged onset date for the present claim, it adheres to that of the previous decision

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, mood disorder-not otherwise specified, depression, anxiety disorder-not otherwise specified and cannabis abuse (20 CFR 404.1520(c) and 416.920(c)). This finding departs from that of the previous decision, in order to account for the severe impairments documented in the present evidence.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). This finding adheres to that of the previous decision.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant must be afforded the opportunity to alternate between sitting and standing once each hour; the claimant may occasionally stoop, crouch, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a setting free of production-rate pace, which setting requires no more than frequent interaction with coworkers, supervisors and the public. This finding departs from that of the previous decision, in order to accommodate the current state of the impairments documented in the present evidence.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). This finding adheres to that of the previous decision.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). Except that this finding recites the alleged onset date for the present claim, it adheres to that of the previous decision.

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not,

10

whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal, but within those issues he raises the following: 1) whether the ALJ improperly applied res judicata; 2) whether the ALJ properly determined that Claimant did not meet Listings 12.04 and 12.06; 3) whether the RFC is supported by substantial evidence; and 4) whether the ALJ fairly considered Claimant's subjective symptom analysis under SSR 16-3p.

### 1. The ALJ did not improperly apply res judicata.

In his first issue, Jones argues that the ALJ improperly applied res judicata by "adopting the same physical limitations" as the 2013 ALJ decision despite having acknowledged that Claimant had produced new and material evidence relating to his impairments. (ECF No. 15 at 10). The Commissioner argues that the ALJ did not improperly apply res judicata, but, instead,

based his decision on a review of the evidence and the fact that the two RFCs included the same physical limitations is supported by the record. (ECF No. 17 at 11). The Court agrees with the Commissioner that res judicata is not involved in this case.

Res judicata "'bars attempts to relitigate the same claim[.]'" *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). As it relates to social security claims, where an individual "files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Earley*, 893 F.3d at 933 (clarifying *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998)).

Here, Claimant's subsequent application alleged an onset date of April 1, 2008. The ALJ properly determined that the period between April 1, 2008 and February 11, 2013 was adjudicated in the prior claim and required dismissal. (ECF No. 12, PageI #: 110-111). Claimant does not assert any error in that finding.

The ALJ explicitly stated that the decision covers February 12, 2013 through November 6, 2019, the date it was issued, which is a period of time outside of the 2013 ALJ decision. (ECF No. 12, PageID #: 110-111). The ALJ also acknowledged that Claimant had introduced new evidence material to the determination of disability, and he was not, therefore, bound by the findings in the 2013 ALJ decision. Moreover, the decision demonstrates that the ALJ "relied on an extensive body of evidence collected after the decision denying [Claimant's previous] application." *Amburgey v. Comm'r of Soc. Sec.*, 751 App'x 851, 861-862 (6th Cir. 2018). Here, the ALJ considered the records of Claimant's physical treatment since 2013 and decided on an RFC that fit the limitations supported by the record. For example, the ALJ discussed the 2017

diagnostic imaging of Claimant's lumbar spine and stated that although the imagining "indicated mild bulging from the L4 through S1 vertebral levels, with minimal foraminal narrowing at the L5/S1 vertebral joint, [there was] no canal stenosis or compressive pathology at any lumbar level, and stable since 2013 (C5F/1-2)." (ECF No. 12, PageID #: 116). The ALJ explained that "[w]hile this finding would be consistent with the claimant's allegations of low back pain, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work." (ECF No. 12, PageID #: 116). Additionally, the ALJ discussed Claimant's treatment modalities and clinical examinations which "consistently, albeit not universally, reported either minimally adverse, or normal findings[.]" (ECF No. 12, PageID #: 116).

In his reply brief, Claimant states that the ALJ improperly applied res judicata and that the matter must be remanded because the ALJ's decision relies, in part, on the opinions of two state agency reviewing physicians who merely adopted the RFC contained in the 2013 ALJ decision, which was decided by an ALJ who had not been properly appointed. (ECF No. 18 at 1-2). Claimant states that "reliance on the prior ALJ's findings…violated [his] constitutional rights" pursuant to *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018). (ECF No. 18 at 1-2). "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *In re: Firstenergy Corp. Sec. Litig.*, 316 F.Supp.2d 581, 599 (6th Cir. 2004) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001))). Neither Claimant in his original brief, nor the Commissioner in the opposition, raised the issue as to whether reliance on the prior ALJ's findings was reversible error under *Lucia*. Therefore, this argument is not properly before this Court and fails for procedural reasons. *Id.*

13

Moreover, the argument fails on further review. The Supreme Court in *Lucia* ruled that the ALJs of the Securities and Exchange Commission had not been appointed in a constitutionally legitimate manner and that remand for de novo review before a different ALJ was required. In April 2021, the Supreme Court decided *Carr v. Saul*, 141 S. Ct. 1352 (2021), holding that SSA claimants are not required to raise an Appointments Clause claim at the administrative level in order to preserve it for review in court. However, Claimant never challenged the appointment of the ALJ who issued the 2013 decision at any time during the 2011 claim's litigation through its resolution in 2014. The time to appeal has ended, and the ALJ's 2013 decision is now final and binding. *See* 42 U.S.C. § 405(g) (allowing for appeals of final agency decisions within sixty days after the notice of the decision is mailed to a claimant); 20 C.F.R. §§ 404.987, 416.1487.

Claimant appears to argue that the current decision is tainted because state agency reviewing physicians agreed with the previous decision. The Court agrees with the Commissioner that "this amounts to an impermissible collateral attack on [Claimant's] 2013 ALJ decision, and *Lucia* does not support reaching back six-plus years into the past to upend a long-final decision that is not, and never was, properly before the Court." (ECF No. 19-1 at 4). In fact, *Lucia* requires a "timely challenge" to the appointment in order to be given "a hearing before a new judge." *Lucia*, 138 S. Ct. at 2055 & n.5. Here, Claimant did not timely raise an Appointments Clause challenge to the 2013 decision and the Court will not allow him to collaterally do so now.[2]

---

[2] Additionally, as discussed further in section V.C.3.d.i, contrary to Claimant's assertion that the state agency reviewing physicians merely adopted the prior RFC, the record demonstrates that the opinions were obtained after reviewing the new evidence and that they simply reached the same conclusion.

The record demonstrates that the ALJ considered the new evidence of Claimant's impairments and did not improperly apply res judicata. That the physical RFC matches that of the 2013 ALJ decision is coincidental and, as discussed in detail below, the RFC is supported by substantial evidence. Accordingly, this issue has no merit.

### 2. Listings

In his second issue, Jones asserts a number of errors, including that the ALJ erred in his consideration of Listings 12.04 and 12.06 by not finding marked limitations in Jones's abilities to interact with others and to concentrate, persist, and maintain pace. (ECF No. 15 at 14). The Commissioner does not address Claimant's listing argument – perhaps because Claimant addresses the listings in his argument about the RFC rather as a Step Three argument. (*See* ECF No. 15 at 12-14). Despite the lack of clarity in Claimant's argument, the Court has reviewed the listings issue raised by Claimant.

At Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). The ALJ "need not discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raises a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing. *Id.* (alteration in original) (quoting *Abbott*, 905 F.2d at 925). "Failure to provide sufficient articulation of Step Three is error." *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *4 (E.D. Mich. Jan. 22, 2016).

Listings 12.04 and 12.06 require either (1) an extreme limitation of one, or marked limitation of two, of the paragraph B categories or (2) a serious and persistent impairment, documented over a period of at least two years, with ongoing treatment and evidence of only marginal adjustment as indicated by the paragraph C criteria. See, 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 12.00, 12.04, 12.08, and 12.11. Here, Jones does not challenge the ALJ's findings under paragraph C, only those under paragraph B. To satisfy paragraph B, Jones must also show extreme limitation of one or marked limitation of two of the following: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.04(B), 12.06(B) "A marked limitation may arise where several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652-53 (6th Cir. 2009). A moderate limitation is defined as having a fair ability to function independently, appropriately, effectively, and on a sustained basis in an area. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00F.2.c.

The ALJ found that Jones did not meet Listings 12.04 and 12.06 because he had only a moderate limitation in understanding, remembering, or applying information; moderate limitation in concentrating, persisting, or maintaining pace; mild limitation in managing himself; and moderate limitation in interacting with others. (ECF. No. 12, PageID #: 114). Jones argues that the ALJ erred in his "B criteria" evaluation of Listings 12.04 and 12.06 by not finding marked limitations in his abilities to interact with others and to concentrate, persist, and maintain pace. (ECF No. 15 at 14).

<u>Interact with others (paragraph B2)</u>

16

The ALJ found that Jones had a moderate limitation in his ability to interact with others. "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(E)(2). "Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id.*

Without further explanation, Jones argues that his testimony and the findings of Dr. Bard support marked limitation in this area. (ECF No. 15 at 14 ("Based on the evidence in this matter, Jones had a marked limitation in interacting with others (testimony and findings of Dr. Bard)."). Claimant fails to direct the Court to what testimony or what findings by Dr. Bard support his argument. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument)). The Court deems this undeveloped argument forfeited.

<u>Concentrate, persist, or maintain pace (paragraph B3)</u>

The ALJ found that Jones had moderate limitations in concentrating, persisting, or maintaining pace. "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1,

Listing 12.00(E)(3). "Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

Jones argues that Dr. Bard's indication that he would need redirecting supports a finding that he suffered greater than a moderate limitation in his ability to concentrate, persist, or maintain pace. (ECF No. 15 at 14). Substantial evidence supports the ALJ's conclusion.

The Claimant reported an inability to complete what he starts and an attention span of ten minutes. The consultative examiner, Dr. Bard noted, on the second of two visits, that Jones's speech was "relevant, coherent and free of pressured delivery, misarticulation or dysfluency. He evidenced normal voice quality and volume. He was able to carry on conversation and initiate ample dialogue. The claimant was articulate and slightly excessively wordy and occasionally needed redirection to complete the interview in a timely fashion. Eye contact was satisfactory." (ECF No. 12, PageID #: 498). Claimant argues that Dr. Bard's notation that he needed occasional redirection supports marked limitation in his ability to contrate, persist, and maintain pace. However, when describing Jones's ability and limitations in sustaining concentration and persistence in work related activities, Dr. Bard stated "claimant performed withing the Average range on the mental status examination. His score today was identical to the same score obtained in November 2017. He exhibited no unusual problems in regard to concentration or persistence. He did not require questions to be repeated or simplified. From a mental health standpoint he presents with no limitations…" (ECF No. 12, PageID #: 500).

18

Moreover, the evidence does not support Jones's testimony that he has an inability to complete what he starts and has an attention span of ten minutes. The ALJ correctly observed that Claimant is a high school graduate, which he achieved without receipt of special education services. (ECF No. 12, PageID #: 356). Further, as the ALJ observed, the records do not indicate difficulties with Claimant's understanding or coherency. Both mini-state mental health status examinations performed by Dr. Bard resulted in Claimant registering scores of thirty out of thirty. (ECF No. 12, PageID #: 478, 498). Dr. Bard noted that Claimant's performance was average. Specifically,

> [Claimant] was able to count backward by serial 7's after five sequential steps. He was able to recall three words after a five minute delay, follow a three step command, write a basic sentence, copy a geometric design and was able to recall his social security number forward and backward correctly. He was able to spell the word world backward and recall one major news event. He was unable to describe a proverb. Mr. Jones was able to recall five digits forward and four digits backward indicating slightly below average performance in working memory. Based on the claimant's overall presentation and language skills, intellectual ability was estimated to be with the Average range (IQ estimate=98).

(ECF No. 12, PageID #: 478). Evidence shows no cognitive impairment (ECF No. 12, PageID #: 424), and a coherent (ECF No. 12, PageID #: 478) and logical (ECF No. 12, PageID #: 545) thought process.

Jones has failed to demonstrate less than a fair ability to function independently, appropriately, effectively, and on a sustained basis in the area of concentrating, persisting, or maintaining pace. Jones has also failed to demonstrate how Dr. Bard's notation that he required occasional redirection demonstrates more than a moderate limitation, especially given Dr. Bard's opinion that he has no unusual problems in regard to concentration or persistence and presents with no mental health limitations. Accordingly, the ALJ's determination that Jones suffered

19

moderate limitation in this area is supported by substantial evidence.

### 3. The RFC is supported by substantial evidence.

Jones claims that the ALJ erred by failing to consider the effect of the combination of his severe impairments on his ability to engage in substantial gainful activity. (ECF No. 15 at 11). Jones asserts that "it is unclear from the record how the ALJ determined that Jones could perform work at the light level of exertion on a sustained basis." (ECF No. 15 at 11). This issue contains several sub-issues: 1) whether the ALJ's finding that Claimant could ambulate effectively was supported by substantial evidence (ECF No. 15 at 13); 2) whether the ALJ erred in finding that Jones would need to alternate positions every hour, rather than every 30 minutes (ECF No. 15 at 13); 3) whether the ALJ properly considered the combination of Claimant's impairments (ECF No. 15 at 15); and 4) whether ALJ properly explained the persuasiveness of the medical opinions (ECF No. 15 at 14).

### a. The ALJ's finding that Claimant can ambulate effectively is supported by substantial evidence.

Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567. "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id*. The ALJ found that Claimant was able to ambulate effectively. Claimant argues that this finding was not supported by substantial evidence, and, thus, the ALJ's finding that he can perform work at the light level of exertion is not supported by substantial evidence. (ECF No. 15 at 13).

According to section 1.00B2b, to ambulate effectively, individuals must:

> be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance

20

> to and from a place of employment or school. Therefore, examples
> of ineffective ambulation include, but are not limited to, the
> inability to walk without the use of a walker, two crutches or two
> canes, the inability to walk a block at a reasonable pace on rough
> or uneven surfaces, the inability to use standard public
> transportation, the inability to carry out routine ambulatory
> activities, such as shopping and banking, and the inability to climb
> a few steps at a reasonable pace with the use of a single hand rail.
> The ability to walk independently about one's home without the
> use of assistive devices does not, in and of itself, constitute
> effective ambulation.

20 C.F.R. Pt. 404 Subpt. P App. 1 § 1.00B2b. Substantial evidence supports the ALJ's finding that Claimant could ambulate effectively. First, there is no evidence that Claimant used an ambulatory aid, nor does he argue that he requires one. Second, the medical evidence indicates that he is able to walk normally. (*See* ECF No. 12, PageID #: 472; 489 ("The claimant was able to walk without a limp. The claimant had normal heel to toe[.]")). Third, Claimant's own statements support the ALJ's finding. Contrary to his hearing testimony, Claimant reported in medical records that he was able to manage household chores, grocery shop, and walk to his mother's house a mile from his own. (ECF No. 12, PageID #: 477; 497). Claimant also walked home from his 2017 consultative examination (ECF No. 12, PageID #: 478), which is a distance of 1.6 miles.[3] Although Claimant recites symptoms of low back pain (ECF No. 15 at 12), he provides no evidence overlooked by the ALJ that indicates he was unable to sustain a reasonable walking pace over a sufficient distance in order to perform his daily activities. In fact, the evidence supports the opposite.

Accordingly, the ALJ's finding that Claimant could ambulate effectively is supported by substantial evidence.

---

[3] Google maps calculates a distance of 1.6 miles from the clinic at 1826 S Main Street in Akron, Ohio to Claimant's house at 1049 Yale Street in Akron, Ohio.

### b. The ALJ's limitation that Jones would need to alternate positions every sixty minutes was supported by substantial evidence.

The ALJ further limited Claimant's RFC by finding that he would need to alternate positions every sixty minutes. (ECF No. 12, PageID #: 115). Claimant argues that this is an error and that the record supports that Claimant would need to alternate positions every thirty minutes. (ECF No. 15 at 13). However, the only evidence that Claimant needed to change positions more frequently than found by the ALJ came from the Claimant, himself: Claimant testified that he could only stand for ten minutes before he would need to sit down (ECF No. 12, PageID #: 149); and at the hearing Claimant requested to stand after a period of sitting (ECF No. 12, PageID #: 138). Although the medical evidence indicates that Claimant had a spine disorder, the ALJ accurately observed that there is "no indication of compressive pathology[.]" (ECF No. 12, PageID #: 116; *see also* ECF No. 12, PageID #: 560 (October 17, 2017 MRI revealed mild disc bulging without significant central stenosis, no "significant issues [r]esulting in the need for narcotics or back surgery"). Clinical examinations reported preserved strength, neurological function and gait. (ECF No. 12, PageID #: 472; 594). Claimant routinely walked a mile to his mother's house in reasonable time. (ECF No. 12, PageID #: 477; 497). Finally, the opinion evidence considered by the ALJ supports the ALJ's finding. State agency reviewing physicians, Dr. Hughes and Dr. Sutherland, both found that Claimant could perform light work, but that he should be allowed to alternate positions once each hour. (ECF No. 12, PageID #: 189, 225). Dr. Vogelgesang, who performed a consultative physical examination of Claimant on May 9, 2018, opined that Claimant could perform light lifting of up to 20 pounds, but may have to avoid extensive bending or twisting. (ECF No. 12, PageID #: 489). Dr. Vogelgesang did not include any additional limitations. Claimant does not cite to any medical evidence or opinion supporting a more significant limitation than already included in the RFC.

Accordingly, substantial evidence supports the RFC's limitation that Claimant be allowed to shift positions every sixty minutes.

### c. The ALJ properly considered the combined effect of Claimant's impairments when crafting the RFC.

Jones argues that the ALJ failed to consider the severity of his impairments in combination. (ECF No. 15 at 15). However, the ALJ specifically recognized his responsibility to determine whether Claimant had a severe impairment or combination of impairments, and whether Claimant had an impairment or combination of impairments that were equivalent to a listed impairment. (ECF No. 12, PageID #: 111-112). The ALJ explained that he "must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)" and that "[i]f the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement" the claimant is disabled. (ECF No. 12, PageID #: 112). The ALJ then found that "the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment" and that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (ECF No. 12, PageID #: 113, 114). An ALJ's specific recognition of his duties to review a claimant's impairments in combination is evidence that the ALJ did, in fact, do so. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012).

Claimant's argument is also unpersuasive because, as detailed herein, in determining the RFC the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the

requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (ECF No. 12, PageID #: 115)). *See Malone*, 507 F. App'x at 472 (citing *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990); *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591–92 (6th Cir. 1987)).

### d.  The ALJ properly explained the persuasiveness of the medical opinions.

Jones argues that the ALJ erred in his persuasiveness findings of the medical opinions. Specifically, that the ALJ erred by finding persuasive the opinions of state agency reviewing physicians Hughes and Sutherland because they had not independently reviewed the medical evidence but, rather, relied on the findings of the 2013 ALJ decision. Additionally, Claimant argues that the ALJ erred by failing to adopt the mental restrictions of the state agency reviewing psychologists and the consultative examiner, Dr. Bard. (ECF No. 15 at 16-17).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e).[4] On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s),

---

[4] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

#### i. State Agency Reviewing Physicians

State agency reviewing physicians Dr. Hughes and Dr. Sutherland opined that Claimant had the ability to perform light work with additional limitations, including that he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, occasionally stoop and crouch, and be allowed to alternate between sitting and standing every hour. (ECF No. 12, PageID #: 189, 225). Both doctors stated that "the RFC given is an adoption of the ALJ decision dated 2-11-13. The RFC is being adopted under AR 98-4 (Drummond ruling)." (ECF No. 12, PageID #: 189, 225).

Claimant argues that Drs. Hughes and Sutherland did not independently review the medical evidence, thus the ALJ erred by finding them persuasive. The Commissioner argues that Claimant's argument is factually incorrect. This Court agrees with the Commissioner.

Here, each disability determination lists the "Evidence of Record" reviewed by the agency for the period of disability beginning February 12, 2013 – the day after the 2013 ALJ decision. These records reviewed include the 2017 opinion of Dr. Bard; medical records from Axess Pointe Community Health Center, Portage Path Behavioral Health, and Dr. Steurer, Jr. (*see* ECF No. 12, PageID #: 181-182, 215-217); the 2018 opinion from Dr. Bard, the consultative

examination report from Dr. Vogelgesand, records from Akron General Hospital, and additional records from Portage Path Behavioral Health (*see* ECF No. 12, PageID #: 213-214). Additionally, the Finding of Fact and Analysis of Evidence section for both doctors demonstrate that both doctors reviewed evidence listed. (*See* ECF No. 12, PageID #: 184, 220-221). Accordingly, Claimant's argument is factually incorrect.

Claimant seems to argue that because Dr. Hughes and Dr. Sutherland adopted the RFC from the ALJ decision in February 2013 and referenced the same, the ALJ's finding of their opinions being "persuasive" is reversible error. However, not only did the ALJ explain that their opinions were consistent with and supported by the overall evidence in the record, but he also specifically addressed the medical evidence:

> The record shows a claimant with a spine disorder, but no indication of compressive pathology (C15F/1-2). Clinical examinations included in the record have consistently reported preserved strength, neurological function and gait (C6F/6), (C18F/4), and the claimant has retained an array of activities of daily living of sufficient breadth to encompass the maintenance of an independent household (C4E/1), and routinely walking the mile to his mother's house in ten minutes (C7F/3), (C10F/3). Restriction to light work is warranted on this evidence, as are the postural limitations, with the most limitations imposed on those maneuvers that most bring the back into play.

(ECF No. 15, PageID #: 115). Moreover, the ALJ's decision discussed the supportability of the opinions: "Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims. and consistency with the remainder of the record."  (ECF No. 15, PageID #: 115). The fact the physical RFC from 2013 is identical to the RFC rendered here is not error where Claimant did not provide evidence that his

physical condition had demonstrably changed or worsened since the 2013 decision. *Amburgey*, 751 App'x at 861-862.

Accordingly, the ALJ's finding that the state agency reviewing physicians' opinions were persuasive is supported by substantial evidence.

### ii.  State Agency Reviewing Psychologists

State agency reviewing psychologist Dr. Goldsmith opined that Claimant did not have any limitation is his understanding and memory, sustained concentration and persistence, or adaptation, but that he was moderately limited in his abilities to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors, and not significantly limited in his abilities to get along with coworkers or peers and maintain socially appropriate behavior and adhere to social appropriate standards of neatness and cleanliness.  (ECF No. 12, PageID #: 190). Dr. Goldsmith opined that Claimant can "interact superficially with others." (ECF No. 12, PageID #: 190). Dr. Goldsmith further explained that Claimant "can perform simple to mod[erately] complex tasks [without] sustained social interactions with general public." (ECF No. 12, PageID #: 191).

On reconsideration, Dr. Matyi opined that Claimant was moderately limited in his ability to understand and remember detailed instructions and explained that Claimant was depressed, anxious, and somatically preoccupied with restricts his capacity for detailed/complex tasks but that he is able to comprehend and remember simple (1-2 step) and occasional complex (3-5 step) instructions. (ECF No. 12, PageID #: 226). Dr. Matyi opined that Claimant was moderately limited in is ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek with interruptions from psychologically based symptoms and perform at

a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (ECF No. 12, PageID #: 226-227).

The ALJ found the opinions not persuasive and explained: "The opinion of Dr. Goldsmith overstates the claimant's cognitive capacity to considerable degree, and his social limitations to a lesser degree. The opinion of Dr. Matyi overstates the claimant's cognitive capacity, social and adaptive limitations. These opinions are only marginally consistent with, and supported by, the evidence of record[.]" (ECF No. 12, PageID #: 120).

Claimant argues "[t]he ALJ committed harmful error when he failed to adopt the restrictions set forth by the reviewing [ ] psychologists." (ECF No. 15 at 17). The Commissioner argues that the ALJ's decision is supported by substantial evidence. (ECF No. 17 at 22).

Here, the ALJ properly explained his finding that the psychologists' opinions were not persuasive by discussing their supportability and consistency with the remainder of the record. First, the ALJ explained the supportability of the psychologists' opinions: "[e]ach of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims." (ECF No. 12, PageID #: 119). Next, the ALJ explained in detail why the opinions were not consistent with the remainder of the record:

> The record shows a claimant with chronic depression and anxiety, which would be expected to impose at least periodic deficits of focus, concentration and memory. Rare treatment notes do describe the need for occasional re-direction (C10F/4), and persistent, mild deficit of working memory (C7F/4), (C10F/4), while the treatment record typically indicates intellectual function in the average range (C7F/4), (C10F/4), with intact memory function and ability to reason in abstract fashion (C1F/2), (C13F/1), with a coherent,

28

logical thought process (C7F/4), (C13F/1) and normal attention and concentration (C1F/2), (C13F/1). If restricted to the performance of simple, routine, repetitive tasks, undertaken in a setting free of anxiety- or frustration-inducing production demands, the claimant appears to have retained sufficient, residual, cognitive function to serve as "backstop" against these periodic deficits from becoming fatal to competitive work. Given the need for even intermittent redirection, I am not sanguine that the same would remain the case if the claimant were to attempt more complex tasks. The claimant has reported that he does not participate in community events (C4E/6), and has a forensic history, though remote, significant for assault and domestic violence (C7F/2). However, he reports receiving visitors routinely (C4E/5), is discernibly able to function in public places, such as stores (C4E/4), and is consistently described in pro-social fashion in the treatment records (C7F/4), (C17F/5), as well as in his interaction with Agency personnel during the course of this claim (C1E/3). In a setting where the claimant's frequency of interaction with others would be controlled, he appears to have retained sufficient, residual, social function to engage in competitive work. Otherwise, treatment notes typically describe fair-to-normal insight and judgment (C1F/2), (C7F/4-5), (C13F/1). The claimant's mental status has remained stable (C1F/2), compare with (C13F/1), despite stressors including the uncertainty of living in a home in foreclosure status (C7F/2). The claimant will likely derive some benefit from restriction to simple, routine, repetitive tasks, conducted in a setting free of strict production pressures, but the record shows him to have typical ability to adapt to workplace stressors.

(ECF No. 12, PageID #: 119-120). Claimant does not assert that the ALJ ignored any material evidence. Instead, Claimant appears to simply disagree with the ALJ's outcome.

Claimant's only specific argument is that the ALJ erroneously failed to include the psychologists' opinion that Claimant be limited to only "superficial" interaction with others. (ECF No. 15 at 17). However, the ALJ adequately explained why he found the opinions not persuasive and had no obligation to adopt the opinions or included limitations. 20 C.F.R. §404.1513a(b)(1) ("Administrative law judges are not required to adopt any prior administrative

medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527").

Accordingly, substantial evidence supports the ALJ's finding that the state agency psychologists' opinions were not persuasive.

### iii.  Psychological Consultant, Dr. Bard

Psychological consultant Dr. Bard gave two opinions as to Claimant's mental impairments and abilities, one in 2017 and one in 2018. (ECF No. 12, PageID #: 475-480, 495-500). Following the initial consultation, Dr. Bard opined that Claimant had a normal range of ability and limitation in understanding, carrying out and remembering instructions, both one step and complex. (ECF No. 12, PageID #: 480). With respect to Claimant's ability to concentrate, persist, and maintain pace, Dr. Bard opined "The claimant performed within the Average range on the mental status examination. He exhibits no unusual problems in regard to his concentration and persistence. He did not require questions to be repeated or simplified. His performance in this area of functioning was within a normal range." (ECF No. 12, PageID #: 480). With respect to Claimant's abilities and limitations in maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, Dr. Bard opined that Claimant's overall performance was "substandard". (ECF No. 12, PageID #: 480). Finally, Dr. Bard opined that Claimant had a low average ability to deal with work pressures in a competitive work setting. (ECF No. 12, PageID #: 480). Six months later, Dr. Bard opined in a substantially similar manner. (ECF No. 12, PageID #: 495). Dr. Bard revised her opinion only insofar as she suggested some limitation in Claimant's ability to adapt to day-to-day stressors.

The ALJ found Dr. Bard's opinions not persuasive and explained:

> Dr. Bard examined the claimant on [] two occasions and was
> reporting within the bounds of her professional certifications and

> specialty. However, it was she who noted the claimant's persistent deficits of working memory (C7F/4), (C10F/4), and by comparison to the overall evidence, described in digest form in the preceding paragraph, she overstates the claimant's adaptive limitations. In addition, and as to the specific degree of limitation that would appertain, her opinions are vague, and unhelpful in assessing the residual functional capacity. These opinions are not consistent with, or supported by, the overall evidence of record[.]

(ECF No. 12, PageID #: 120). Claimant argues that the ALJ erred by failing to include Dr. Bard's limitations in the RFC. However, Claimant fails to direct the Court to any contradicting mental health records or opinions eroding the ALJ's analysis or errors in the ALJ's understanding of the facts. Here, the ALJ cited specific evidence, which he had outlined earlier, that contradicted the consultative examiner's opinions. (ECF No. 12, PageID #: 120). The ALJ concluded Dr. Bard's opinions were "not consistent with or supported by the overall evidence of record." (Id.). This is all that the regulations require. 20 C.F.R. §404.1520c.

Accordingly, the ALJ's determination that Dr. Bard's opinions were not persuasive is supported by substantial evidence.

### 4. The ALJ properly considered Claimant's subjective symptom analysis under SSR 16-3p.

A claimant's statements as to pain or other symptoms will not alone establish that he is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017). First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)). The ALJ here determined that Claimant's medically determinable impairments could reasonably be expected to cause the

alleged symptoms. (ECF No. 12, PageID #: 118). Accordingly, the first step is met.

Next, the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. SSR 16-3p lists the factors relevant to the ALJ's determination at this step, which include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)). An ALJ is not required to expressly address all the factors listed in SSR 16-3p but should sufficiently articulate his assessment of the evidence to assure the court that he considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).

When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the claimant's symptom testimony "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247; *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016). To the extent that the ALJ's findings are based on an assessment of the claimant's symptom testimony, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531.

Claimant argues that the "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Jones' testimony was credible." (ECF No. 15 at

19). This Court disagrees.

The ALJ here determined that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 12, PageID #: 118). The ALJ noted that "claimant reports back pain, and pain in his inner thighs (C4E/2), which he ascribes to degenerative disc disease (C5A/1-2), and which is reported to cause deficits of his ability to lift, squat, bend, stand, walk, sit and climb (C4E/6), along with chronic anxiety and depression (C5A/1-2), manifesting as anxiety attacks (C7F/1) and imposing deficits of his ability to concentrate and complete tasks (C4E/6)." (ECF No. 12, PageID #: 116).

In assessing Claimant's subjective complaints, the ALJ considered Claimant's daily activities. The ALJ noted:

> the claimant has reported the following daily activities: the claimant is able to maintain an independent household (C4E/1), to attend to all his self-care, to engage in light household chores, including the care of a small lawn, preparation of meals, and the care of a household pet. He is able to engage transportation services, to shop in stores, manage his own medications, finances and appointments. He receives daily visits from friends and family, watches television for pleasure, and routinely walks the one mile distance to his mother's house in ten minutes (C4E), (C10F/1), (C7F/3), (C10F/3). Episodically, at least, he has engaged in activities requiring greater physical exertion, as when he was raking leaves (C2F/2), or when he walked home from the initial consultative examination, a distance of 1.06 miles (C7F/4).

(ECF No. 12, PageID #:118). The ALJ explained that "[i]n short, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While none of these activities, considered in isolation, would warrant or direct a finding of 'not disabled'; when considered in combination, they

strongly suggest that the claimant would be capable of engaging in the work activity
contemplated by the residual functional capacity." (ECF No. 12, PageID #:118).

The ALJ discussed Claimant's treatment modalities. The ALJ noted:

> The claimant is not a candidate for surgery or narcotic pain
> medications, and recommendations for treatment have been
> restricted to heat, stretching and exercise, and non-narcotic
> medications (C6F/1), (C12F/9).
>
> The claimant reports a very good benefit from the use of a
> combination of the prescription medications "Gabapentin" and
> "Topamax" (C15F/3, 9), (C17F/3), (C19F/2). He has reported
> numerous side effects from these medications in reports to the
> Agency (C4E/7), (C6E/5), (C9E/8), but has routinely denied side
> effects, in reports to his prescriber (C12F/6), (C15F/3, 9),
> (C17F/3), (C19F/2).
>
> He has followed no other discernible form of treatment, whether
> conservative in nature, as by a course of physical therapy, or more
> invasive, as by a course of injection therapy through pain
> management. Reports of injections in 2015 are reported in the
> record, but no such evidence was included.

(ECF No. 12, PageID #: 116). With respect to Claimant's treatments for his mental impairments,
the ALJ noted that "claimant's treatment has been, almost exclusively, confined to the use of
psychotropic medications. He reports side effects of drowsiness with their use (C6E/5), but
concedes their positive effect on attenuating his symptoms (C7E/1), (C7F/2), (C9F/1), (C18F/4).
He has twice begun a regimen of counseling, but his first ended after seven months and eight
visits in 2013 (C1F/2) and his second ended after one month and single visit, in 2018 (C13F/1)."
(ECF No. 12, PageID #: 117).

The ALJ's decision discusses several of the SSR 16-3p factors: Claimant's daily
activities; his medication; his lack of treatment other than medication; and the location, duration,
frequency and intensity of the individual's pain or other symptoms. Having reviewed the medical
evidence of Claimant's symptoms, the ALJ determined that Claimant's statements of his

symptoms were not entirely consistent with the medical evidence and other evidence in the record. (ECF No. 12 at 118). The Court finds that the ALJ's assessment of Claimant's symptom testimony is supported by substantial evidence in the record. Therefore, the Court finds Claimant's assignment of error without merit.

## IV. Conclusion

Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Jones Supplemental Security Income and Disability Insurance Benefits. Additionally, Defendant's Motion to File a Surreply (ECF No. 19) is GRANTED. Defendant's Surreply (ECF No. 19-1) is deemed filed as of August 5, 2021.

**IT IS SO ORDERED.**

DATED: January 12, 2021

_____*s/Carmen E. Henderson*_____
Carmen E. Henderson
United States Magistrate Judge